**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-062**

**Filing Date: April 9, 2013**

**Docket No. 31,784**

**STATE OF NEW MEXICO,**
**ex rel., CHILDREN, YOUTH**
**and FAMILIES DEPARTMENT,**

     **Petitioner-Appellee,**

**v.**

**MARSALEE P.,**

     **Respondent-Defendant,**

**and**

**STANLEY P.,**

     **Respondent,**

**and**

**IN THE MATTER OF DA'VONDRE P.,**
**WHITLEY P., and JORDAN P.,**

     **Children.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

New Mexico Children, Youth and Families Department
Charles E. Neelley, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee

Caren I. Friedman

1

Santa Fe, NM

for Appellant

Richard J. Austin
Farmington, NM

Guardian ad litem

**OPINION**

**WECHSLER, Judge.**

**{1}**    We examine in this appeal of a parental termination order circumstances that require the district court and Petitioner Children, Youth and Families Department (the Department) to fulfill obligations under the Abuse and Neglect Act, NMSA 1978, Sections 32A-4-1 to -34 (1993, as amended through 2009).  We hold that the district court erred by terminating Mother's parental rights without ensuring that the Department had complied with Section 32A-4-22(I) of the Abuse and Neglect Act, which mandates that the Department "shall pursue the enrollment" on behalf of children eligible for enrollment in an Indian tribe.  Accordingly, we reverse the termination of Mother's parental rights and remand to the district court.

**BACKGROUND PRIOR TO PARENTAL TERMINATION TRIAL**

**{2}**    The Department filed a neglect/abuse petition in August 2010 against Mother regarding three of her children, Da'Vondre P., Whitley P., and Jordan P. (collectively, the children).  The Department took custody of the children on August 9, 2010 because of unsanitary living conditions and illegal drug use by Mother and the children's father.

**{3}**    The district court held a custody hearing on August 23, 2010 and filed a custody order on August 24, 2010.  The Department stipulated that the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 to 1963 (1978), applied because the children were eligible for enrollment in the Navajo Nation.  The order states that "[t]he children are eligible for enrollment with the Navajo Nation and are therefore subject to [ICWA]."   In the predispositional study, the Department acknowledged that two of the children were eligible for enrollment into the Navajo Nation "if . . . [M]other . . . chooses to enroll."  Additionally, the report states that all three children are "eligible for enrollment in the Navajo [Nation]. [Mother] is not enrolled in the [Navajo Nation]."

**{4}**    The district court held an adjudicatory hearing on October 4, 2010.  After the hearing, the district court entered a judgment adjudicating the children as abused and providing the Department custody of the children.  In the judgment, the district court stated that the children were not subject to ICWA.  Likewise, the initial judicial review order entered in

2

January 2011 contained a statement that the children were not subject to ICWA. The district court reached an identical conclusion in its status review and change of plan hearing order filed on April 5, 2011. Despite its previous stipulation to the contrary, the Department subsequently filed a motion to terminate parental rights in which it contended that the children were not subject to ICWA.

**REQUEST FOR CONTINUANCE AND TRIAL**

{5}    At the beginning of the termination of parental rights trial, Mother's counsel requested a continuance so that the provisions of ICWA could be followed. Before Mother arrived at trial, Mother's counsel stated that he believed that Mother and the children were now enrolled in the Navajo Nation, or at the very least, Mother was trying to get herself and the children enrolled in the Navajo Nation. As a result, Mother's counsel argued that the case was subject to the provisions of ICWA. The Department argued that, at the beginning of the case, neither Mother nor children were enrolled in the Navajo Nation and therefore ICWA did not apply.

{6}    The district court agreed that if Mother arrived at the hearing and had a certificate of Indian blood (CIB) issued by the Bureau of Indian Affairs (BIA), ICWA would apply, and the trial would need to be continued. The district court expressly stated that it perceived that Mother's effort to enroll in the Navajo Nation was a "last minute tactic." Mother's counsel then pointed out that the custody hearing order contained the stipulation that the children were subject to ICWA. The Department responded that it had received a letter from the Navajo Nation stating that the children were not eligible for enrollment and that, as a result, the October 2010 adjudicatory order changed the initial determination that ICWA applied.

{7}    Once Mother arrived at the trial, the district court inquired as to whether Mother had completed enrollment. Mother disclosed that she did not have a CIB and that she had not completed enrollment but that she was pursuing enrollment for herself and the children. Mother's counsel then read into the record a letter from the Navajo Nation's tribal enrollment services that stated that Mother came to its offices to enroll herself and her six children and that Mother was eligible to enroll. The letter continued that the tribal enrollment office is waiting for additional documentation in order to process the application. Mother, who was adopted, explained that her application for enrollment had to proceed through a review board to trace her lineage to determine whether she is the child of the woman she identifies to be her biological mother and that the process takes about six weeks.

{8}    The district court stated that it had known since the custody hearing that Mother was eligible to enroll and was still not enrolled and that the trial would go forward without application of ICWA. The district court stated that the ICWA issue was in the same position as it was on "day one," which was that Mother knew she was eligible but knew there were things she had to do in order to get enrolled. Therefore, because Mother was not enrolled at the date of the trial, the district court proceeded with the trial.

3

**{9}** During the trial, Mother testified that she began the enrollment process into the Navajo Nation once she received paperwork from the state of California regarding her adoption, several months before the trial. She stated that it took six years to get the paperwork because it was a closed adoption. Mother testified that her birth certificate listed her adoptive mother as her mother and that she needed a birth certificate that listed her biological mother in order to enroll. She stated that her mother was full Navajo, that Mother was one-half Navajo, and that the children were therefore one-quarter Navajo. She further testified that she still needed her marriage license, divorce decree from her first marriage, and two of the children's birth certificates in order to complete the enrollment process.

**{10}** At the conclusion of trial, the district court announced its ruling from the bench. Specifically regarding ICWA, the district court held that there was no evidence that Mother was enrolled with any tribe and that therefore ICWA did not apply. The district court advised Mother to continue the process of enrolling the children and that if she is successful, ICWA's placement preferences would apply. The district court then found by clear and convincing evidence that Mother had not alleviated the conditions and causes that brought the children into the Department's custody. The district court terminated Mother's parental rights.

**ARGUMENTS ON APPEAL**

**{11}** Mother filed a timely appeal and focuses her arguments on whether the district court erred in failing to apply the protections of ICWA. Particularly, Mother argues that (1) the district court erred by determining that the children were not Indian children as defined by ICWA and therefore erred by refusing to apply the substantive requirements of ICWA, including (a) making necessary findings pursuant to 25 U.S.C. § 1912(d), (e); (b) giving preferential foster care placement of the children to the children's extended family, pursuant to 25 U.S.C. § 1915; and (c) applying the higher standard of proof required by 25 U.S.C. § 1912(f) than in non-ICWA termination proceedings; (2) the Department failed in its obligation to pursue enrollment on behalf of the children pursuant to Section 32A-4-22(I) of the Abuse and Neglect Act; and (3) the district court erred in conducting the trial and terminating Mother's parental rights despite the Department's failure to comply with ICWA's notice requirement in 25 U.S.C. § 1912(a).

**{12}** "The interpretation of ICWA and its relationship to [the Abuse and Neglect Act] present questions of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Marlene C.*, 2011-NMSC-005, ¶ 14, 149 N.M. 315, 248 P.3d 863. Additionally, we review interpretations of the Abuse and Neglect Act de novo. *See State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 24, 141 N.M. 692, 160 P.3d 601. "ICWA is a remedial statute in that it was enacted to stem the alarmingly high percentage of Indian families being separated by removal of children through custody proceedings[,]" and we therefore construe it liberally in order to effectuate its purpose. *Marlene C.*, 2011-NMSC-005, ¶ 17 (internal quotation marks and citation omitted).

4

**ICWA AND THE ABUSE AND NEGLECT ACT**

**Generally**

**{13}**    We begin by briefly discussing ICWA and its relationship to the New Mexico Abuse and Neglect Act, which underlies the issues in this appeal.  Congress enacted ICWA in 1978 to govern proceedings for the termination of parental rights, adoptions, and foster care placement involving Indian children.  *See* 25 U.S.C. §§ 1901 to 1963.  In enacting ICWA, Congress determined "that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe[.]" 25 U.S.C. § 1901(3).  Additionally, Congress found "that the [s]tates, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."  25 U.S.C. § 1901(5).  As a result, ICWA is intended to "promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs."  25 U.S.C. § 1902.

**{14}**    When ICWA applies to a termination proceeding, it provides several minimum substantive and procedural protections that must be used as opposed to the standards used under state law.  For example, before terminating a parent's parental rights to an Indian child, ICWA requires the state court to make a determination, on the record, that beyond a reasonable doubt, termination is required to prevent serious emotional or physical damage to the Indian child.  25 U.S.C. § 1912(f).  When the proceedings involve foster placement, ICWA requires the state court to give preference to placement of the child with a member of the child's extended family, with the tribe, or with another Indian family.  25 U.S.C. § 1915(a).  In determining whether good cause exists for placement outside of the Indian community, the state court is directed to examine the reasons given in light of "the prevailing social and cultural standards of the Indian community." 25 U.S.C. § 1915(d).  Additionally, ICWA requires that notice of the proceeding be given to the Indian parent and the Indian tribe and that the tribe be given the opportunity to intervene in the proceedings.  25 U.S.C. §§ 1911(c), 1912(a).

**{15}**    The New Mexico Abuse and Neglect Act contains several provisions designed to effectuate ICWA.  For example, when the Department takes custody of a child, the Department "shall make reasonable efforts to determine whether the child is an Indian child." Section 32A-4-6(C).  If the Department determines that the child is an Indian child, the Abuse and Neglect Act requires that the Department give notice of the proceedings to the Indian tribe in accordance with ICWA.  Section 32A-4-6(D).  Section 32A-4-9 contains placement preferences for foster care and pre-adoptive placement of an Indian child that

5

mirror ICWA's placement preferences. Section 32A-4-21(B)(9) requires the Department to provide information in the predispositional report to the district court addressing whether the child is an Indian child, and if so, whether ICWA's placement preferences were followed and whether the child's treatment plan provides for maintaining the child's cultural ties. The district court is then required to make factual findings regarding these issues in its dispositional judgment. Section 32A-4-22(A)(11).

**{16}** The Abuse and Neglect Act also contains the procedures for terminating the parental rights of an Indian child. When the Department files a motion for terminating the parental rights of an Indian child, the Department must include in its motion whether the child "is subject to" ICWA, and if so, it must state (1) the tribal affiliations of the parents; (2) the specific actions taken by the Department to notify the Indian tribes, including supporting documentation; and (3) the specific actions taken to comply with the placement preferences of ICWA. Section 32A-4-29(B)(7). Before terminating the parental rights of a child subject to ICWA, the district court must ensure that the termination complied with ICWA. Section 32A-4-28(E).

**Application**

**{17}** We first address Mother's argument that the district court erred by holding the trial without applying the substantive and procedural provisions of ICWA and the accompanying provisions in the Abuse and Neglect Act, including (a) making necessary findings pursuant to 25 U.S.C. § 1912(d), (e); (b) giving preferential foster care placement of the children to the children's extended family pursuant to 25 U.S.C. § 1915; and (c) applying the higher standard of proof required by 25 U.S.C. § 1912(f) than in non-ICWA termination proceedings. Mother argues that the children are "Indian child[ren]" as defined by ICWA and the Abuse and Neglect Act, and, therefore, the district court should have applied ICWA at the trial.

**{18}** ICWA and the Abuse and Neglect Act define "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4); *see also* NMSA 1978, § 32A-1-4(K) (2009). By its express terms, the children are "Indian child[ren]" as defined by ICWA if (1) the children are "member[s]" of the Navajo Nation, or (2) the children are "eligible for membership" *and* Mother is a "member" of the Navajo Nation. 25 U.S.C. § 1903(4). It is undisputed by both Mother and the Department that both Mother and the children are eligible to enroll in the Navajo Nation but are not formally enrolled. The parties do dispute, however, whether the eligibility for enrollment of Mother and the children in the Navajo Nation is sufficient to make either Mother or the children "member[s]" for purposes of ICWA. *Id.*

**{19}** As we have discussed, the district court premised its determination that ICWA does not apply on the failure of Mother and the children to be formally enrolled at the time of the trial. Apparently, it was the district court's view that in order to be a "member" Mother or

6

the children must be formally enrolled in the Navajo Nation. Mother argues that the district court erroneously based its refusal to apply ICWA on the fact that Mother had not yet obtained her CIB or was not formally enrolled by the Navajo Nation. Mother contends that "member," in the context of ICWA's definition of Indian child, is a flexible term, not limited to persons formally enrolled with an Indian tribe or those issued a CIB by the BIA. *See Cohen's Handbook of Federal Indian Law* § 11.02[2], at 827 (2005) ("[T]he term 'member' is flexible, not limited to persons formally enrolled or possessing a [CIB] issued by the BIA.").

**{20}** Mother fails to argue or explain how or why she and the children are to be considered "members" of the Navajo Nation other than arguing that the term "member" is flexible. We reject Mother's argument that either she or the children are "members" of the Navajo Nation on this basis alone. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that we will not review unclear or undeveloped arguments). Even if we were to address Mother's argument, it appears that, at least in the context of the Navajo Nation and ICWA, enrollment with the Navajo Nation is synonymous with membership in this case. *See In re Guardianship of Ashley Elizabeth R.*, 116 N.M. 416, 417, 863 P.2d 451, 452 (Ct. App. 1993) (characterizing children not registered with the Navajo Nation as "eligible for membership"); *see also Nielson v. Ketchum*, 640 F.3d 1117, 1124 (10th Cir. 2011) (holding that a child did not fit the definition of Indian child because neither the child nor the mother was enrolled in the Indian tribe).

**{21}** We therefore proceed under the assumption that Mother and the children are not "members" of the Navajo Nation and instead are eligible to be members subject to the completion of the enrollment process. Because neither Mother nor the children are "members" of the Navajo Nation, the children do not meet either definition of "Indian child[ren]" under ICWA. *See* 25 U.S.C. § 1903(4) (defining Indian child as when the child is a member of an Indian tribe or the child is eligible to be a member and is the biological child of a member). We must nevertheless determine the requirements of ICWA and the New Mexico Abuse and Neglect Act regarding children who are not technically Indian children under ICWA but who are eligible for enrollment as members in an Indian tribe.

**Section 32A-4-22(I)**

**{22}** In this regard, Mother argues that the Department failed in its obligation under Section 32A-4-22(I) of the Abuse and Neglect Act to pursue enrollment on behalf of the children who were eligible for enrollment. Section 32A-4-22(I) states that "[w]hen a child is placed in the custody of the [D]epartment, the [D]epartment shall investigate whether the child is eligible for enrollment as a member of an Indian tribe and, if so, the [D]epartment shall pursue the enrollment on the child's behalf." Mother contends that the record does not reflect that the Department made any efforts in pursuing the enrollment of the children despite knowing early in the proceedings that the children were eligible for enrollment.

**{23}** As we have discussed, the Department stipulated prior to the August 24, 2010

7

custody order that the children were eligible for enrollment in the Navajo Nation, and the district court memorialized this stipulation in the custody order. Likewise, the Department acknowledged in the predispositional reports adopted by the district court that the children were eligible for enrollment. Although the Department essentially argues that something happened between the custody hearing and the adjudicatory hearing that led it to believe that ICWA does not apply to the children, it acknowledges that the reason it reached the conclusion is unclear from the record. Mother testified during the adjudication that she was not currently registered with the Navajo Nation in response to a question from the Department. From this point forward, the district court's judicial review and status review orders stated that the children were not subject to ICWA. However, at the beginning of the trial, Mother disclosed to the district court that she received a letter from the Navajo Nation tribal enrollment services stating that she and the children were eligible for enrollment and that Mother was pursuing enrollment.

**{24}**    Despite this information, the Department stated that it had no concerns about going forward with the trial at that time without applying ICWA. By taking this position despite knowing early in the case that the children were in fact eligible for enrollment and learning, at least at trial, that Mother had started the enrollment process, the Department failed to fulfill its obligation under Section 32A-4-22(I) that it "shall pursue the enrollment on the child[ren]'s behalf." Under this circumstance, the Department should not have pursued going forward with the trial and should have agreed to the continuance requested by Mother in order to investigate the children's eligibility for enrollment and help Mother pursue enrollment if necessary.

**{25}**    We hold that the district court erred by terminating Mother's parental rights before it ensured that the Department fully complied with Section 32A-4-22(I). The district court has an affirmative obligation to make sure that the requirements of the Abuse and Neglect Act are followed prior to the termination of something as fundamental as the parental rights to a child. *See State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 ("Terminating parental rights implicates rights of fundamental importance."); *cf. State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 52, 136 N.M. 53, 94 P.3d 796 (holding that the district court has an affirmative duty to protect a parent's due process right throughout a termination proceeding). The record is largely devoid of any attempts the Department made to facilitate the enrollment of the children prior to trial. By then, it was clear to the Department that the children were eligible, that Mother had undertaken efforts to attempt to achieve her and their enrollment, and that Mother was delayed due at least in part to a unique circumstance associated with Mother's own adoption and information recorded on one or more of her birth certificates. Thus, we are unable to ascertain the extent the Department complied with Section 32A-4-22(I)'s mandate over the course of the proceedings leading up to the trial. At a minimum, the Department should not have contested the continuance requested by Mother upon learning that Mother had begun the enrollment process with the children.

8

**{26}**     This case illustrates the important need for district courts to ensure that the Department strictly complies with Section 32A-4-22(I).  Had the Department fulfilled its obligation to pursue enrollment on behalf of the children, the children's status would have been determined by the start of the trial.  Instead, the district court was faced with an untenable situation in which, on the day of the trial, the status of the children still was not conclusively determined by the Navajo Nation, the children remained merely eligible for enrollment, and the Department wished to press forward with trial by opposing Mother's request for a continuance.  It was error for the district court to terminate Mother's parental rights before the Department fulfilled its obligation.  Because of our disposition, we do not reach Mother's argument regarding whether the Navajo Nation was entitled to notice of the proceedings under ICWA.

**CONCLUSION**

**{27}**     We hold that the district court has an affirmative obligation to ensure that the Department complies with Section 32A-4-22(I) before terminating a parent's parental rights.  Because the district court terminated Mother's parental rights before the Department fulfilled its obligation under Section 32A-4-22(I), we reverse the judgment terminating Mother's parental rights.

**{28}     IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *State ex rel. CYFD v. Marsalee P.*, No. 31,784**

**APPEAL AND ERROR**
Standard of Review

**CHILDREN**
Termination of Parental Rights

**CONSTITUTIONAL LAW**
Due Process

9

**INDIAN LAW**
Indian Child Welfare Act

**STATUTES**
Interpretation
Legislative Intent