**Certiorari Granted, April 9, 2014, No. 34,583**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-045**

**Filing Date: February 10, 2014**

**Docket No. 32,333**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH AND**
**FAMILIES DEPARTMENT,**

      **Petitioner-Appellee,**

**v.**

**DJAMILA B.,**

      **Respondent-Appellant,**

**and**

**ANGELA C., ABDEL MAHDJID B.,**
**and CHARLES A.,**

      **Respondents,**

**and**

**In the Matter of MAHDJID B.**
**and ALIAH B.,**

      **Children.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**John J. Romero, District Judge**

Children, Youth and Families Department
Charles E. Neelley, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

1

for Appellee

Lopez & Sakura, LLP
Julie Sakura
Santa Fe, NM

for Appellant

Patricia Anderson
Bosque Farms, NM

Guardian ad Litem

**OPINION**

**KENNEDY, Chief Judge.**

**{1}** In this case of first impression, we hold that a kinship guardian (Guardian), under the Kinship Guardianship Act (the KGA), NMSA 1978, §§ 40-10B-1 to -15 (2001), who is named as a respondent in the abuse and neglect proceeding, is a necessary and indispensable party in the abuse and neglect case and may not be involuntarily dismissed from the case without first revoking the kinship guardianship according to the procedures specified in the KGA.

**{2}** Because Guardian was a necessary and indispensable party in the abuse and neglect case by virtue of her legal status as a kinship guardian and because her status as Guardian was not terminated under the KGA, the district court erred in dismissing Guardian from the case over her objection. Therefore, the order dismissing Guardian and all subsequent orders entered without notice to her must be reversed.

**I.     BACKGROUND**

**{3}** No documents establishing the kinship guardianship and its scope were presented to the district court or for our review on appeal. Nevertheless, it is undisputed that, in a separate proceeding in 2007, Guardian was appointed as kinship guardian of M. and A. (Children) pursuant to the KGA, and Children lived with Guardian, their maternal aunt, at least since that time.

**{4}** In June 2010, Children, Youth and Families Department (CYFD) took custody of Children and filed a neglect/abuse petition against mother, father, stepfather, and Guardian pursuant to the Abuse and Neglect Act (the Act), NMSA 1978, §§ 32A-4-24 (2009) and -28 (2005). At the first adjudicatory hearing, CYFD proposed reunification of Children with Guardian. The district court ordered a treatment plan that focused on Guardian. Reunification with Guardian remained the goal of the proceeding in orders following the first

judicial review on November 2, 2010, the second judicial review on February 3, 2011, and two permanency hearings in May 2010 and August 2011. The district court adopted CYFD's reunification plan at a subsequent permanency hearing on August 9, 2011, under NMSA 1978, Section 32A-4-25.1 (2009), and Children began to transition back to living with Guardian. Guardian continued with the treatment plan.

**{5}** Approximately six months later, on February 16, 2012, CYFD filed a motion to dismiss Guardian from the proceedings, stating that it was changing its permanency plan for Children from reunification with Guardian to adoption and would pursue termination of parental rights. CYFD alleged that, since Guardian is not Children's parent with no parental rights to terminate, she was not an appropriate party to the termination of parental rights proceedings. CYFD further asserted that "[p]er CYFD policy," Guardian was not eligible to adopt children or for foster placement.[1] The district court approved CYFD's proposed change to the permanency plan in its order filed on April 17, 2012.

**{6}** Guardian opposed CYFD's motion to dismiss her from the case. At the subsequent evidentiary hearing on the motion to dismiss Guardian, the district court assumed that without any evidence before it, the kinship guardianship was "temporary" and determined that "it does not divest the parents of . . . rights, [and] it does not vest parental rights in that individual who has been granted temporary kinship guardianship." Months later, on July 2, 2012, the district court granted the motion to dismiss Guardian in an order devoid of findings of fact or conclusions of law. This appeal followed.

**{7}** The record shows that CYFD then filed a motion to terminate the parental rights of Children's natural parents, and a motion for open adoption mediation on July 26, 2012, three weeks after Guardian was dismissed. Although the motion for adoption lists Guardian as a respondent, there is no record that she was served with either the motion for adoption or a copy of the notice of hearing on the motion to terminate parental rights set for September 2012.

## II.    DISCUSSION

**{8}** Guardian's appeal is based on two arguments. First, Guardian maintains that she could not be dismissed from the abuse and neglect proceedings until her kinship guardianship was terminated pursuant to the Act or revoked pursuant to procedures set forth in the KGA. Second, as Children's kinship guardian, Guardian insists she should be afforded the same or similar due process rights as a biological parent which, in Guardian's view, meant that she could not be dismissed from the abuse and neglect proceedings without first terminating her rights or revoking her kinship guardianship.

---

[1] We note that this policy, though irrelevant to the proceedings at hand, was not asserted to be based on any external authority.

**{9}**     We first note that the Act explicitly provides for terminating parental rights, but not kinship guardianships. Section 32A-4-28; NMSA 1978, § 32A-4-29 (2009). Consequently, we hold that, because Guardian's kinship guardianship cannot be terminated under the Act, and it had not been revoked pursuant to the KGA, Guardian's status has not been terminated. As such, it was error for the district court to dismiss Guardian from the abuse and neglect case. Because we reverse on this premise, we do not address the due process argument.

**A.     Guardian Possessed Statutory Rights**

**{10}**     Guardian's argument on appeal requires us to interpret the applicable statutes under the KGA and the Act. Accordingly, our review is de novo. *State ex rel. Children, Youth & Families Dep't v. Marlene C.*, 2011-NMSC-005, ¶ 14, 149 N.M. 315, 248 P.3d 863. The statute or statutes, whose construction is in question, are to "be read in connection with other statutes concerning the same subject matter[.]" *Quantum Corp. v. State Taxation & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848.

**{11}**     "The [KGA] is intended to address those cases where a parent has left a child or children in the care of another for ninety consecutive days and that arrangement leaves the child or children without appropriate care, guidance[,] or supervision." Section 40-10B-2(B). Thus, the purposes of the KGA are to:

> (1)     establish procedures to effect a legal relationship between a child and a kinship caregiver when the child is not residing with either parent; and
>
> (2)     provide a child with a stable and consistent relationship with a kinship caregiver that will enable the child to develop physically, mentally[,] and emotionally to the maximum extent possible when the child's parents are not willing or able to do so.

Section 40-10B-2(C). In keeping with its purpose, the KGA provides that "[a] guardian appointed for a child pursuant to the [KGA] . . . *has the legal rights and duties of a parent* except the right to consent to adoption of the child and except for parental rights and duties that the court orders retained by a parent." Section 40-10B-13(A) (emphasis added).

**{12}**     Turning to the Act, it is clear that a kinship guardian may be made a party to an abuse and neglect proceeding in the same manner as a parent. NMSA 1978, § 32A-4-3(B) (2005). Guardians then progress through the case in the same manner as parents. NMSA 1978, § 32A-4-2 (2009) (definitions); NMSA 1978, § 32A-4-6 (2009) (including "guardians" when discussing taking children into custody); NMSA 1978, § 32A-4-7(A) (2009) (release from custody); NMSA 1978, § 32A-4-22(A)(5), (B)(1), (D) (2009) (dispositional hearings); NMSA 1978, § 32A-4-25(H)(7) (2009) (treatment plans); § 32A-4-25.1(E) (permanency placement). These sections are all concerned with determining whether the child was abused or neglected by his or her caretaker and whether CYFD can reunify the family. However,

4

the Act drops the term "guardian" when dealing with termination of parental rights. Section 32A-4-28; Section 32A-4-29 (mentioning only parents). We presume the term "guardian" was dropped because guardians are not parents, and there are separate, specific statutes for terminating a guardian's rights.

**{13}** A kinship guardian has the statutory "legal rights and duties of a parent except the right to consent to adoption" or any "rights and duties that the court orders retained by a parent." Section 40-10B-13(A). A kinship guardian is therefore entitled to the statutory benefits of the Act, including the right that "[r]easonable efforts shall be made to preserve and reunify the family, with the paramount concern being the child's health and safety." Section 32A-4-22(C). Because a kinship guardian may have custody of a child taken away and returned through the Act in the same way as a parent and because of the kinship guardian's legal status, the kinship guardian has the same right as a parent to be a party in a proceeding to terminate parental rights and to advocate or object to the termination of parental rights based on the best interest of the child until the kinship guardianship is properly terminated. *See* § 40-10B-13. In this case, the district court disregarded Guardian's legal relationship with Children. The record shows the district court assumed that, without any evidence before it, the kinship guardianship was "temporary" and concluded that "it does not divest the parents of parental rights, [and] it does not vest parental rights in that individual who has been granted temporary kinship guardianship." While this may be true as to parental rights, Guardian *was* vested with clearly delineated statutory rights that were not terminated by the Act. The district court erred in concluding that because CYFD had custody of Children and Guardian had no parental rights, she could be dismissed from the case. Its conclusion as to the guardianship's "temporary" nature is not supported by either evidence or the KGA.

**{14}** The district court recognized that it could not terminate a kinship guardianship that was ordered by another district court judge. The dissent does not presume to create such an ability for the children's court either. Section 40-10B-14 specifically provides that "[t]he court appointing a guardian pursuant to the [KGA] . . . retains continuing jurisdiction of the matter." One district court judge cannot set aside the order of another district court judge. N.M. Const. art. VI, § 13 (providing that a district court may not issue an order to a judge or court of equal or superior jurisdiction). If Guardian was somehow unfit to continue, the KGA termination procedure was the sole available route to end her status.

**{15}** Without termination, the kinship guardianship continued. Without evidence of any limitations or revocations regarding the kinship guardianship, the district court's assumption that any existed was unfounded. CYFD filed its motion to dismiss Guardian and changed the permanency plan to adoption on February 16, 2012. The district court entered a permanency hearing order changing the permanency plan from reunification to adoption on April 17, 2012. Guardian was dismissed from the case on July 2, 2012, and the order of dismissal references hearings in March and May 2012. We presume that CYFD was capable of moving to revoke the kinship guardianship under the KGA when it first took custody of Children two years previously, up to and including when it changed its plan to termination

5

of parental rights and adoption of Children. Section 40-10B-12(A), (B) (establishing the basis upon which kinship guardianships might be terminated). CYFD failed to do so, and the district court specifically declined to alter Guardian's status under the KGA. Throughout all this time, Guardian remained a kinship guardian to Children and an indispensable and necessary party to the proceedings. The dissent promotes an ad hoc and unauthorized resolution. Here, CYFD bears responsibility for the delay. If the best interests of Children are not met by Guardian, early attention to the KGA is requisite, both for the abuse and neglect case and, as we note below, with regard to later adoption proceedings.

**B.      Failure to Terminate Kinship Guardianship Prevents Adoption**

**{16}**      By the court's order of April 17, 2012, directing that the permanency plan for Children change to adoption, Guardian remained a necessary and indispensable party. An adoption cannot take place while the kinship guardianship still exists. A petition for adoption must allege "the existence of any court orders, including placement orders, that are known to the petitioner and that regulate custody, visitation[,] or access to the adoptee, copies of which shall accompany and be attached to the petition as exhibits[.]" NMSA 1978, § 32A-5-26(G) (2003). Moreover, the petition must be served upon "the legally appointed custodian or guardian of the adoptee" unless service "has been previously waived in writing[.]" NMSA 1978, § 32A-5-27(A)(4) (2001).

>      The notice shall state that the person served shall respond to the petition within twenty days if the person intends to contest the adoption and shall state that the failure to so respond shall be treated as a default and the person's consent to the adoption shall not be required.

Section 32A-5-27(E). The response must allege:

>      (1)      the existence of any court orders known to the respondent that regulate custody, visitation[,] or access to the adoptee but have not been filed with the court at the time the response is filed and copies of which shall be attached to the response;
>
>      (2)      the relationship, if any, of the respondent to the adoptee[.]

NMSA 1978, § 32A-5-28(B) (1993). So long as Guardian's kinship guardianship was not terminated, she was a necessary and indispensable party to the pending adoption proceeding. Absent termination of the kinship guardianship, we conclude that these statutes give Guardian a right to be heard about whether adoption is in the best interest of Children.

**{17}**      We conclude that termination of the kinship guardianship must be one of the prerequisites to a valid adoption because of the guardian's legal relationship to the child. A central purpose of the KGA is "to effect a legal relationship between a child and a kinship caregiver." Section 40-10B-2(C)(1). The KGA then explicitly states what the relationship

6

is—a guardian appointed by the district court pursuant to the KGA who has the legal rights and duties of a parent with exceptions that are not applicable here. Since the result of an adoption is the creation of the legal relationship of parent and child, NMSA 1978, § 32A-5-37(B) (2005), any existing kinship guardianship relation with children must necessarily be terminated before the adoption can be completed. Hence, the proscription that an adoption can only be granted if "all necessary consents, relinquishments, terminations[,] or waivers have been obtained[.]" NMSA 1978, § 32A-5-36(F)(3) (2003).

**{18}** Even if the adoption takes place under the authority of the Act, the foregoing requirements must be satisfied. Section 32A-4-28(F) states, in part:

> If the court finds that parental rights should be terminated; *that the requirements for the adoption of a child have been satisfied*; that the prospective adoptive parent is a party to the action; and that good cause exists to waive the filing of a separate petition for adoption, the court may proceed to grant adoption of the child, absent an appeal of the termination of parental rights.

(Emphasis added.) Thus, we conclude that, because the permanency plan included a proposed adoption, Guardian remained a necessary and indispensable party to the abuse and neglect case, so long as her kinship guardianship remained in effect. Termination of a kinship guardianship under the KGA is equally necessary as termination of parental rights under the Act. Under the existing statutory scheme, the kinship guardianship must be terminated in accordance with the procedure set forth in Section 40-10B-12(B). The KGA is specific when it states that "[t]he court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction of the matter." Section 40-10B-14. The district court erred in this case when Guardian was involuntarily dismissed from the case without the kinship guardianship first being terminated as provided in the KGA.

## C. Due Process

**{19}** Guardian's second argument is that CYFD's policy of not considering her as an adoptive or foster parent based on her plea of no contest at the abuse and neglect proceeding violates due process principles. As we are reversing on other grounds favorable to Guardian, we need not and do not consider this argument.

## III. CONCLUSION

**{20}** The district court erred in dismissing Guardian from the proceedings while she remained the kinship guardian of Children because she was a necessary and indispensable party to the pending case. We therefore reverse the district court's dismissal of her as a party respondent in the abuse and neglect act and reverse all subsequent orders entered in the case in proceedings that took place without notice first having been provided to Guardian. We remand this matter to the district court to reinstate Guardian as a party respondent in the

7

matter and for further proceedings in accordance with law. *See Chris & Christine L. v. Vanessa O.*, 2013-NMCA-107, ___ P.3d ___ (No. 32,193, Aug. 20, 2013) (holding that remand for a new trial under abuse and neglect act might be required to correct deprivation of party's rights).

**{21}** **IT IS SO ORDERED.**

_____
                                                    **RODERICK T. KENNEDY, Chief Judge**

**I CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

**JONATHAN B. SUTIN, Judge (dissenting)**

**SUTIN, Judge (dissenting).**

**{22}** I respectfully dissent. I would affirm the district court's order dismissing Guardian from the abuse and neglect proceedings.

**1.       Introductory Clarifications**

**{23}** Two divisions of the Second Judicial District Court are at play in regard to the dismissal issue on appeal. *See* LR2-103(A)(1), (4) (stating that the Second Judicial District Court judges and clerks are divided into four courts, two of which are the children's court and the domestic relations court, and enumerating the cases within the purview of each court). The children's court division handles Children's Code abuse and neglect proceedings. *See* § 32A-1-4(C) (stating that within the context of the Children's Code, "court" means the children's court division of the district court); § 32A-1-8(C) (stating that the children's court shall have jurisdiction to decide all matters incident to the children's court proceedings). The domestic relations division of the district court handles, with enumerated exceptions not relevant here, "all cases of a domestic relations nature[.]" LR2-103(A)(4) NMRA. Chapter 40 of New Mexico's statutes, entitled Domestic Affairs, includes the KGA within Article 10B. Thus, the domestic relations division of the district court handles guardianship proceedings, including appointment of a guardian under the KGA. *See* § 40-10B-7 (governing the appointment of a kinship guardian); § 40-10B-14 ("The court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction of the matter."). In Abuse and Neglect Act proceedings, the children's court has jurisdiction over guardians appointed under the KGA. *See* § 32A-1-8(A)(3), (4) (stating that the children's court has exclusive original jurisdiction of all proceedings under the Children's Code in which a child is alleged to be abused or neglected); § 32A-1-8(C) (stating that in abuse and neglect proceedings, the children's court has "jurisdiction over both parents to

8

determine the best interest of the child and to decide all matters incident to the court proceedings"); § 32A-1-4(I) (defining "guardian" within the context of the Children's Code, in relevant part, as "a person appointed as a guardian by a court").

## 2.        Clarification Regarding Guardian's Appeal

**{24}**     In the proceedings under the Act, on September 3, 2010, Guardian pleaded no contest to the allegations against her in the abuse and neglect petition. On September 17, 2010, the children's court entered a stipulated judgment and disposition holding that as to Guardian, Children were neglected children as defined in the Children's Code. Guardian did not then and does not now appeal that order.

**{25}**     On April 17, 2012, the children's court ordered the permanency plan for Children to be changed from reunification to adoption. In its April 17, 2012, order, the children's court found, among other things, that Guardian had "not made diligent sufficient efforts to comply with and cooperate in the treatment plan ordered by the [c]ourt"; she had "not made sufficient progress toward alleviating the causes necessitating the removal of . . . [C]hildren"; Children's "best interests will be served by maintaining custody with [CYFD] and implementing a further treatment plan to promote the possible adoption of . . . [C]hildren"; and "[t]here is no evidence to indicate that [Guardian was] . . . equipped to take custody of . . . [C]hildren." Guardian was a party to the abuse and neglect case when this order was entered; however, Guardian did not then and does not now appeal that order.

**{26}**     On July 2, 2012, the children's court entered an order dismissing Guardian from the abuse and neglect case. Guardian appeals exclusively from this order.

**{27}**     On July 26, 2012, CYFD filed a motion for open adoption mediation. In this appeal, Guardian does not raise any argument in regard to the motion for open adoption mediation. Nor does Guardian base her appeal on any alleged deprivation of her rights under the Adoption Act. *See generally* NMSA 1978, §§ 32A-5-1 to -45 (1993, as amended through 2012).

**{28}**     Guardian raises two issues on appeal. First, Guardian argues that the children's court erred in dismissing her from the abuse and neglect case without first affording her the process due a parent under Sections 32A-4-28 and 32A-4-29, governing the termination of parental rights or, alternatively, without first revoking her guardianship relationship under Section 40-10B-12, governing the revocation of a kinship guardianship. Second, Guardian argues that because she "served as Children's parent for more than three years before the filing of the petition" she "should be afforded the same or similar due process rights as a biological parent."

## 3.        The Termination of Parental Rights Laws Do Not Apply to Guardian

**{29}**     The Children's Code defines a "guardian" as "a person appointed as a guardian by

9

a court or Indian tribal authority or a person authorized to care for the child by a parental power of attorney as permitted by law[.]" Section 32A-1-4(I). The Children's Code defines a "parent" as "a biological or adoptive parent if the biological or adoptive parent has a constitutionally protected liberty interest in the care and custody of the child[.]" Section 32A-1-4(P); *see State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, ¶ 10, 126 N.M. 670, 974 P.2d 164 (recognizing that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their child[ren]" (internal quotation marks and citation omitted)). Thus, under the Children's Code, a guardianship is a legally cognizable relationship; however, it is controlled and delimited by a court or by the child's parent(s). Unlike a parent-child or adoptive parent-child relationship, nothing in the Kinship Guardianship Act, the Children's Code, or our case law provides that a guardian has a constitutionally protected liberty interest in regard to the children to whom she is guardian. Nor, in this case, does Guardian provide any authority to support a conclusion that she had a constitutionally protected liberty interest in Children.

**{30}** Because a parent has a judicially and legislatively recognized constitutionally protected liberty interest in his or her child, the children's court cannot terminate the parent-child relationship without affording the parent due process. *Ruth Anne E.*, 1999-NMCA-035, ¶ 10. The process due a parent in terms of terminating parental rights to a child is outlined in Sections 32A-4-28 and -29. Sections 32A-4-28 and -29 do not apply to guardians. That Sections 32A-4-28 and -29 apply to parents but not to guardians may be fairly construed as an implicit statement by the Legislature that the process due a parent is not due a guardian because a guardian has no constitutionally protected interest in the child. Thus, Guardian's argument, in this case, that she should not have been dismissed from the case without first having had her rights terminated pursuant to Sections 32A-4-28 and -29, is legally unfounded.

**4.     Guardian's Rights as to Children Were Adjudicated by the Children's Court**

**{31}** I disagree with Guardian and the majority that the children's court could not dismiss Guardian from the case until the kinship guardianship was formally revoked pursuant to Section 40-10B-12 by the district court that appointed Guardian. Opinion ¶ 9. *See* § 40-10B-12 (authorizing the court to revoke a guardianship created under the KGA); § 40-10B-14 (stating that "[t]he court appointing a guardian pursuant to the [KGA] retains continuing jurisdiction of the matter"). Pursuant to Section 40-10B-13(A), Guardian had the "legal rights and duties of a parent except the right to consent to adoption of the child[.]" Thus, Guardian had the legal right to care and custody of Children. *Cf.* § 32A-1-4(P) (stating that a parent's interest in a child is one of care and custody). Yet the right of a parent to the care and custody of his or her children is not absolute; it is subject to the district courts' authority, pursuant to the Abuse and Neglect Act, of being interrupted and, under certain circumstances, terminated. *See State v. Sanders*, 1981-NMCA-053, ¶ 12, 96 N.M. 138, 628 P.2d 1134 (stating that parents do not have an absolute right to the custody of their children); *see also* § 32A-4-6 (permitting the CYFD to take custody of a child); §§ 32A-4-28, -29 (permitting district courts to terminate parental rights). By extension, neither does a

10

guardian have an absolute right to care and custody of a child.

**{32}** Guardian was stripped of her right to custody of Children when she was adjudicated to have neglected Children, and Children were ordered to remain in the legal custody of CYFD. *See* § 32A-1-4(O) (stating that "legal custody" includes, among other things, "the right to determine where and with whom a child shall live[,] the right and duty to protect, train[,] and discipline the child and to provide the child with food, shelter, personal care, education[,] and ordinary and emergency medical care"). Thereafter, CYFD, in its capacity as Children's legal custodian, worked with Guardian toward reunification with Guardian; however, in spite of CYFD's efforts, reunification of Children with Guardian was ultimately determined by CYFD and by the court not to be in Children's best interests. As such, the children's court determined that adoption was the most appropriate permanency plan for Children. The children's court's adjudications in regard to Guardian's neglect and custody rights, together with changing Children's permanency plan to adoption, rather than reunification with Guardian, was not only authorized under the Act, it effectively and lawfully terminated Guardian's kinship guardianship rights of custody and care and was tantamount to a revocation of those care and custody rights, because it constituted formal recognition of the fact that Guardian, by her own actions and failures, no longer had a right to care and custody of Children. Thus, whether or not the children's court could formally revoke the kinship guardianship, absent the right to care and custody of Children, the kinship guardianship was lawfully reduced to a nominal relationship, to be revoked, if necessary, in an ancillary proceeding before the domestic relations division of the district court.

**{33}** The permanency plan having been changed from reunification to adoption, CYFD moved to dismiss Guardian from the abuse and neglect proceedings. In its dismissal motion, CYFD stated, in part, that it was "filing a motion for [t]ermination of [p]arental [r]ights and [Guardian] does not have parental rights to terminate and will not benefit from following a treatment plan and whether she follows a treatment plan does not affect the final permanency for . . . [C]hildren" because "[C]hildren cannot be safe with [Guardian]." Children's guardian ad litem concurred in CYFD's motion. After taking evidence and hearing testimony over the course of a two-day hearing on CYFD's motion to dismiss, the children's court granted the motion.

**{34}** The practical effect of the dismissal of Guardian was to alleviate CYFD of any obligation to provide Guardian with a treatment plan and the related assistance in achieving the treatment goals. Guardian has not shown any further practical effect of her dismissal from the abuse and neglect proceedings, nor has the majority done so. Having ultimately determined that reunification with Guardian was not a viable permanency plan, a determination that Guardian has not appealed or shown to be error, requiring CYFD to continue to implement a treatment plan for Guardian would be of no benefit to Children, and it would require CYFD to expend time and other resources on Guardian to no avail. There no longer existed any question as to Guardian's right to continue care and custody of Children.

11

**{35}** Further, as CYFD moved toward its next step, which was to terminate the parental rights of Children's biological parents[2], I see no rational or practical legal basis on which to hold that Guardian had a right to continue as a party to that proceeding. As demonstrated earlier, Sections 32A-4-28 and -29, governing the termination of parental rights, did not apply to Guardian. Guardian became superfluous in the proceedings to terminate the biological parents' parental rights to Children and to move into a permanency plan for adoption. Any care and custody rights Guardian may have had were lawfully eliminated pursuant to the children's court's authority under the Act.

**5.    The Children's Court's Ruling Prevented Unnecessary, Undesirable Delay**

**{36}** The parties and Children will be adversely affected by the majority's holding that "the order dismissing Guardian and all subsequent orders entered without notice to her must be reversed." Opinion ¶ 2. To hold that Guardian may not be dismissed from the case until the guardianship is revoked will result in further delay, indefinite limbo for Children, and inappropriate further proceedings, all to Children's detriment. Children will be adversely affected by the delay that results from the pendency of the children's court proceedings awaiting a revocation proceeding in the domestic relations court. One must also consider the delay that could result from a potential appeal from the revocation determination. While these court proceedings are ongoing, Children will be haunted with uncertainty and deprived of permanency and stability. *See State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266 ("[I]t is important for children to have permanency and stability in their lives, [therefore] termination proceedings should not continue indefinitely."). In weighing the potential harm to the dismissed Guardian versus the indeterminant, in-limbo status of Children, the scale dips heavily in favor of Children. The children's court's adjudications regarding Guardian stand. They cannot be ignored. Their factual and legal validity has not been attacked on appeal. As a matter of policy, if not res judicata, the adjudications put an end to Guardian's right to custody of and to provide care to Children. *Cf. Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶¶ 7 n.1, 8, 314 P.3d 698 (stating that res judicata, which term encompasses both issue and claim preclusion, bars re-litigation of claims or issues that were finally adjudicated on the merits in an earlier action, involve the same parties, and involve the same cause of action). There exists little, if any, reason to dwell on a formal KGA revocation process at this point, particularly in light of the facts that Guardian has been adjudicated neglectful of Children and that the children's court has determined that Children's best interests will be served by continued departmental custody and potential future adoption. These un-appealed adjudications may be judicially noticed by and should be binding on the domestic relations court, causing and, if necessary, requiring that court to revoke the kinship guardianship. The majority opinion gives no reason other than form or technicality over substance to reverse

_____

[2]At the time that this Opinion was filed, the parental rights of Children's biological father had been terminated by the district court. The majority's holding will cause the district court's order in that regard to be reversed. Opinion ¶ 2.

every order entered by the children's court after Guardian was dismissed, returning the abuse and neglect proceedings to a pre-parental rights termination status, merely to force CYFD to pursue a formal revocation in the domestic relations court of the guardianship pursuant to the KGA.

**6.        Guardian's Due Process Contention Has No Merit**

**{37}**     Guardian argues that having "served as Children's parent for more than three years" before the abuse and neglect petition was filed, she "should be afforded the same or similar due process rights as a biological parent." Further, Guardian observes that the non-precedential lead opinion in *In re Guardianship of Victoria R.* recognized that "a growing number of jurisdictions . . . provide legal recognition and protection to psychological parent-child (or equivalent) relationships." 2009-NMCA-007, ¶ 15, 145 N.M. 500, 201 P.3d 169; *see id.* ¶ 23 (Pickard, J., special concurrence). Guardian concludes her due process argument by stating that "due process requires any dismissal of Guardian from the abuse/neglect proceedings comport with the procedures set forth in the [Kinship Guardianship Act] and in the [Abuse and Neglect] Act."

**{38}**     For the reasons set out earlier in this dissent, Guardian's contention that she could not be dismissed from this case unless she was afforded a termination of parental rights hearing or until her guardianship was revoked, is unavailing. So too is Guardian's observation that some courts have recognized "psychological parent-child" relationships. It is not accompanied by an argument demonstrating how the notion of a psychological parent-child relationship applies here, or how the argument has constitutional significance. Nor is it accompanied by a citation to evidence in the record demonstrating that such a relationship was established between her and Children in this case. Finally, although Guardian cites the due process balancing factors applicable to the question whether a parent's due process rights were protected in the termination of parental rights proceedings, she does not develop an argument demonstrating how those factors apply here. *See Mafin M.*, 2003-NMSC-015, ¶¶ 17, 19 (stating that, in determining whether due process was satisfied in a termination proceeding, the appellate courts consider (1) the parent's interest; (2) "the risk to [the parent] of an erroneous deprivation through the procedures used"; (3) "the probable value, if any, of additional or substitute procedural safeguards"; and (4) "the government's interest"). Guardian's undeveloped arguments provide no basis for reversal. *State ex rel. Children, Youth & Families Dep't v. Marsalee P.*, 2013-NMCA-062, ¶ 20, 302 P.3d 761 (recognizing that this Court does not review unclear or undeveloped arguments).

**7.        The Majority Opinion's Holding in Regard to Adoption**

**{39}**     As the case moves forward, assuming that CYFD succeeds in its motion to terminate the rights of both of Children's biological parents, and further assuming CYFD succeeds in finding potential adoptive parents, CYFD will, pursuant to the court-approved permanency plan, move toward adoption proceedings. *See* §§ 32A-5-17(A)(2), (4)-(5), 32A-5-19(A) (stating that as a prerequisite to adoption, a child's mother and father must consent to the

13

adoption or relinquish their parental rights to a child, but consent or relinquishment is not required when the parents' rights in regard to the child have been terminated). The record does not reflect the stage of any adoption-related proceedings. The majority's discussion of the prospective adoption is hypothetical and goes not only beyond the issues raised by Guardian[3] but also beyond the issues in this case.

**{40}** Adoption proceedings are governed by the Adoption Act. *See* §§ 32A-5-1 to -45; *see also* § 32A-4-28(F) (stating that pursuant to the Act, if a parent's parental rights are terminated, there is no appeal from that termination, and the requirements of the Adoption Act are satisfied, the children's court may enter an adoption decree to take effect sixty days after the termination of parental rights). Here, the adoption process will presumably begin with CYFD placing Children in the home of the prospective adoptive parent(s). Section 32A-5-12(A)(1) ("No petition for adoption shall be granted by the [domestic relations] court unless the adoptee was placed in the home of the petitioner for the purpose of adoption . . . by [CYFD.]"). Within 120 days of the placement, the prospective adoptive parent(s) must petition the domestic relations court for adoption. Section 32A-5-25(A) (governing the time for filing a petition for adoption); § 32A-5-26 (stating the required contents of the petition for adoption).

**{41}** The petition for adoption must be served on a number of people, including "the legally appointed . . . guardian of the adoptee[.]" Section 32A-5-27(A)(4). Proof of service of the notice on all persons for whom notice is required, including a legally appointed guardian, shall be filed with the court before any hearing adjudicating the rights of that person. Section 32A-5-27(I). A person who has been served with a petition for adoption and wishes to respond to it by contesting the adoption has twenty days to do so. Section 32A-5-27(E). The children's court "shall conduct hearings on the petition for adoption so as to determine the rights of the parties[.]" Section 32A-5-36(A). "The court shall grant a decree of adoption if it finds that the petitioner has proved by clear and convincing evidence that[, among other things,] all necessary consents, relinquishments, terminations[,] or waivers have been obtained[.]" Section 32A-5-36(F)(3).

**{42}** In this case, the majority holds that "[a]n adoption cannot take place while the kinship guardianship still exists." Opinion ¶ 16. In my view, this holding is problematic for three reasons. First, the holding addresses a legal issue of first impression that was not raised or considered in the children's court, nor was it briefed by the parties, and is, therefore, not properly before this Court. Second, the holding is not clearly supported by the Adoption Act, nor is it clearly supported by the KGA.

**{43}** The KGA provides that a kinship guardian does not have the right to consent to

_____

[3] Guardian does not cite the Adoption Act in either of her briefs, nor does she develop an argument regarding the implications of dismissal from the abuse and neglect case as it relates to the adoption issue.

14

adoption of a child. Section 40-10B-13(A). Whether this provision should be interpreted as standing for the converse proposition that a kinship guardian does not have the right to contest an adoption is not at issue in this appeal and is not analyzed by the majority. Thus, I leave this question of legislative intent for another day when it may be properly preserved, researched, and analyzed. Further, although the Adoption Act gives a guardian a right to contest an adoption, there is no indication in that Act that the court would be prohibited by the guardian's contestation from granting a decree of adoption. Nor is there any clear indication in the Adoption Act that the legal relationship created by a kinship guardianship order must be revoked prior to an adoption decree. Relying on Section 32A-5-36(F)(3), the majority observes that "all necessary consents, relinquishments, terminations[,] or waivers" must be obtained before an adoption decree may be entered; however, the majority's assumption that the revocation of a kinship guardianship comes within this category is unsupported by authority or analysis. Without more, I do not assume that the kinship guardianship stands in the way of an adoption that is in the best interests of the adoptees. *See* § 32A-5-36(F)(7) (stating that the court shall grant a decree of adoption if it finds that the petitioner has proved by clear and convincing evidence that "the petitioner is a suitable adoptive parent and the best interests of the adoptee are served by the adoption").

**{44}** Third, I see no basis on which to reverse any of the children's court's orders in the abuse and neglect case on the basis of the court's order changing Children's permanency plan from reunification to adoption. Guardian did not appeal the children's court's order in that regard, and it has no bearing on the yet-to-occur adoption proceedings. As stated earlier in this dissent, adoptions are governed by the Adoption Act. The Adoption Act requires the prospective adoptive parents to serve notice of the adoption petition upon guardians, including those appointed under the KGA, and to file proof of service with the court demonstrating that the guardian was served with the notice. Sections 32A-5-27(A)(4), (I). A court-appointed guardian is not precluded in a separate Adoption Act proceeding to state his or her views in regard to adoption. When and if CYFD succeeds in finding adoptive parents for Children, if the strictures of the Adoption Act are not followed, Guardian may take steps to remedy that illegality. We should not assume, without any evidence to the effect, that Guardian's rights under the Adoption Act will be overlooked or violated or that her dismissal from the abuse and neglect proceedings has any effect on the future adoption proceedings.

**CONCLUSION**

**{45}** I would affirm the children's court's order.

_____
**JONATHAN B. SUTIN, Judge**

**Topic Index for *State ex rel. CYFD v. Djamila B.*, No. 32,333**

**APPEAL AND ERROR**

15

Standard of Review

**CHILDREN**
Kinship Guardianship

**CIVIL PROCEDURE**
Indispensable Parties

**CONSTITUTIONAL LAW**
Due Process

**DOMESTIC RELATIONS**
Adoption
Neglect and Abuse
Termination of Parental Rights